**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

UNITED STATES OF AMERICA

|   |   |
|---|---|
| | ) |
| v. | )  Case No. 2:25-CR-00425-DCN |
| | ) |
| LINDSAY MARIE WILLIS, | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S SENTENCING MEMORANDUM AND**
**MEMORANDUM IN SUPPORT OF VARIANCE FROM THE SENTENCING**
**GUIDELINES**

On January 22, 2026, Defendant Lindsay Marie Willis entered a guilty plea to Counts One

through Six of the Indictment, each charging Wire Fraud in violation of 18 U.S.C. § 1343. From

the earliest stages of this investigation, Ms. Willis fully cooperated with law enforcement agents.

She immediately accepted responsibility for her conduct, entered a timely guilty plea, and provided

a complete statement to investigators. Most notably, Ms. Willis has made full restitution in the

amount of $175,000.00, satisfying the entirety of Beauregard Design's losses before sentencing,

an act of genuine accountability that distinguishes her case from the vast majority of white-collar

defendants who appear before this Court.

Ms. Willis, 39 years old, is the devoted mother of four-year-old twins, Reese and Genevieve,

and the primary caretaker of her household. She suffered the devastating loss of her infant daughter

Etta in a drowning accident in 2020, a tragedy that precipitated the anxiety for which she has since

been receiving ongoing therapeutic treatment. She is currently employed as a software sales

representative with Blackbaud, working fully remotely, and poses no risk of recidivism. To

understand Ms. Willis as a human being and not merely as a "defendant," this Court must

1

understand what she carried into the years in which this offense occurred: the unimaginable, unrelenting grief of a mother who lost her 17-month-old daughter in a drowning accident.

Counsel respectfully submits this memorandum on Ms. Willis's behalf for the Court's consideration. For the reasons set forth herein, Ms. Willis respectfully requests that this Court impose a non-custodial sentence *below the advisory guideline range*, reflecting a sentence that is sufficient but not greater than necessary to accomplish the goals of federal sentencing under 18 U.S.C. § 3553(a).

I. **APPLICATION OF THE STATUTORY SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the Sixth Amendment renders the United States Sentencing Guidelines advisory, not mandatory. Courts are now required to *consider* the Guidelines but must also weigh the full range of factors set forth in 18 U.S.C. § 3553(a), including the history and characteristics of the defendant.

The sentence imposed must be "sufficient but not greater than necessary" to accomplish the goals of sentencing under § 3553(a)(2): (1) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (2) to afford adequate deterrence; (3) to protect the public from future crimes of the defendant; (4) to provide needed educational, vocational, or medical treatment; (5) to avoid unwanted disparities among defendants with similar records who have been found guilty of similar conduct. As applied to the facts of this case, all of the sentencing objectives are more than adequately served by a sentence *below* the advisory range of 10–16 months. (PSR ¶ 55.)

II. **THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF MS. WILLIS (§ 3553(a)(1))**

A. *The Offense Conduct*

2

Between approximately February 2021 and September 2023, Ms. Willis misappropriated funds from her employer, Beauregard Design, an interior design firm in Charleston, South Carolina, by using the company's American Express credit card accounts to make personal purchases of furniture and home décor items. (PSR ¶¶ 7–16.) The scheme involved intermingling personal purchases with legitimate client orders and, on certain occasions, obtaining and using a second owner's credit card without authorization. (PSR ¶¶ 8–11.) The investigation ultimately revealed a total loss of $175,000, including approximately $20,000 in legal fees incurred by the business as a result of Ms. Willis' conduct. (PSR ¶ 17.)

Ms. Willis does not minimize the harm she caused. She acknowledges that her conduct was wrong, that it damaged the trust and financial stability of the individuals who employed her, and that it has had lasting consequences for her own family and reputation. She accepted responsibility for her actions at the earliest opportunity, pleading guilty on January 22, 2026, to all six counts of the Indictment without the benefit of a written plea agreement. (PSR ¶ 5.)

### B.  Ms. Willis' History and Characteristics

Lindsay Marie Willis was born on June 15, 1986  in Cincinnati, Ohio. She was raised in a stable and loving home. (PSR ¶ 42.) At age 18, Ms. Willis moved to Charleston, South Carolina, to attend the College of Charleston. She earned her Bachelor's degree in International Business and Spanish in 2009, a reflection of her academic discipline and ambition. (PSR ¶ 49.)

### 1.  Family Circumstances and Caretaking Responsibilities

Ms. Willis married Bryan Willis on November 7, 2017, in Charleston, South Carolina. The couple has two children: four-year-old twins Reese and Genevieve. (PSR ¶ 43.) Ms. Willis is the primary caretaker for these young children, managing their daily care, transportation, and schooling needs throughout the week.

3

Before this Court is a woman who, in the span of just a few years, buried her baby daughter, battled a grief-driven anxiety disorder, raised infant twins, and—in the midst of all of that—made choices she deeply regrets. The Willis family lost their infant daughter, Etta, in a drowning accident in 2020, when she was just 17 months old. (PSR ¶ 43.) No parent emerges from that kind of loss intact. The sudden, traumatic death of a child is among the most psychologically devastating events a human being can experience. It is one that can produce profound symptoms of grief, anxiety, emotional dysregulation, and a fractured sense of self and future. Ms. Willis did not have the luxury of processing that loss in peace. Life demanded that she keep moving when everything in her had stopped.

The offense conduct in this case began in February 2021, just months after Etta's death. This Court should not overlook that timing. Counsel does not offer it as an excuse, and Ms. Willis herself does not seek to minimize her responsibility for the choices she made. But context matters. The sentencing framework under § 3553(a)(1) directs this Court to consider "the history and characteristics of the defendant," and the history of Lindsay Willis includes a grief so profound that it destabilized her at the very moment the offense conduct began. The question this Court must ask is not simply what Ms. Willis did but who she is, and what she was carrying when she did it. The fact that she has since rebuilt herself through therapy, through accountability, through restitution, through the raising of her two surviving children is itself evidence of her character and her capacity for rehabilitation.

It is this loss that precipitated her anxiety disorder and led to her ongoing therapeutic treatment. (PSR ¶ 46.) Courts consistently recognize the relevance of profound personal trauma in the history and characteristics of a defendant. *Koon v. United States*, 518 U.S. 81, 113 (1996). Ms. Willis's experience is among the most devastating that a parent can suffer, and a sentence that

4

ignores it would fail the statutory command to treat her as an individual. The Court is asked to consider the whole person, not only the offense.

An active sentence of incarceration would leave two four-year-old children without their primary caregiver at a uniquely fragile period in their development. They need their mother present, stable, and well. While Ms. Willis recognizes that her choices and actions alone are what brought her before this Court, she respectfully asks that the Court consider her unique position within her family and the critical need to provide ongoing, stable care to her young children.

### 2. *Mental and Emotional Health*

Ms. Willis has been receiving therapeutic treatment for anxiety since the death of her daughter in 2020. Her treatment consists of individual therapy sessions and prescription medication. (PSR ¶¶ 46–47.) She has made meaningful progress, but continues to experience serious anxiety. (PSR ¶ 47.) The therapeutic relationship she has built with her therapist, her medication regimen and treatment plan is not something that can be continued within the Bureau of Prisons.

The Court has broad authority to consider a defendant's mental and emotional health in deciding whether to grant a variance. An active term of imprisonment carries a genuine risk of exacerbating Ms. Willis's anxiety disorder and destroying the therapeutic progress she has worked diligently to achieve in the wake of her daughter's death. The Bureau of Prisons does not specialize in grief therapy. It is unlikely she would have access to her current treatment regimen within its walls. Imposing incarceration that interrupts trauma-focused treatment would not rehabilitate Ms. Willis. It would set her back. It would not serve the purposes of sentencing under § 3553(a)(2)(D). To ignore the role of her mental health in this analysis would be to ignore the longstanding tradition of treating every convicted person as an individual, not merely a guideline calculation.

### 3. *Employment and Financial Stability*

Ms. Willis is currently employed as a software sales representative with Blackbaud, a position she has held since September 2024. She earns an annual salary of $90,000 and works 100% remotely. (PSR ¶ 51.) Prior to her employment at Beauregard Design, Ms. Willis worked in sales at Insperity for five years. Her work history reflects her consistency and diligence in providing for her family. A non-custodial sentence would allow Ms. Willis to maintain her employment and preserve the household income necessary to support her two young children.

### 4. Acceptance of Responsibility and Restitution

Ms. Willis made full restitution in the amount of $175,000.00 to Beauregard Design prior to sentencing. (PSR ¶ 71.) This was accomplished, in part, through proceeds from the sale of the family home, a significant personal sacrifice demonstrating the depth of Ms. Willis's commitment to making her victim whole. As a direct consequence, the PSR reflects that a restitution order is not needed. (PSR ¶ 18.)

Ms. Willis has expressed profound remorse for the harm her actions caused, not only to Beauregard Design, but to her family, her professional reputation, and the trust placed in her by her employer. She has spent the past year reflecting, attending therapy and taking active steps toward accountability. Her decision to plead guilty to all six counts without a written plea agreement, to cooperate fully and to pay restitution in full before sentencing speaks to the authenticity of her remorse and her genuine commitment to rehabilitation.

## III. DETERRENCE AND PROTECTION OF THE PUBLIC (§ 3553(a)(2)(B)-(C))

Ms. Willis has no prior criminal history whatsoever. (PSR ¶¶ 22–27.) She is a Criminal History Category I offender with a total criminal history score of zero, and she qualifies as a Zero-Point Offender under USSG § 4C1.1, entitling her to an additional two-level reduction in her offense level. (PSR ¶ 40.)

6

Since the investigation began and charges were filed, Ms. Willis has had to confront the prospect of federal conviction and the lifetime stigma of a felony record. She has maintained perfect compliance with all conditions of pretrial supervision. (PSR ¶ 6.) The collateral consequences of this prosecution alone: the reputational damage, the financial sacrifice required to make restitution, the disruption to her family's life, and the permanent federal felony conviction, constitute a powerful specific deterrent to any future criminal conduct.

The likelihood of recidivism is vanishingly small. Ms. Willis is a first-time, nonviolent offender who poses no danger to the public. She has worked diligently to make amends for her actions in 2021. She is a person who has faced federal prosecution, lost her home, paid back every dollar, and done the hard internal work of confronting her own conduct. A sentence below the advisory guideline range is more than sufficient "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

## IV.  EDUCATIONAL AND TREATMENT NEEDS (§ 3553(a)(2)(D))

Ms. Willis holds a Bachelor's degree in International Business and Spanish from College of Charleston. She has consistently maintained stable employment. (PSR ¶¶ 49, 51.) She has no educational deficits and no vocational needs that could be remedied by a term of active incarceration within the BOP. She is already actively engaged in mental health treatment, which is a therapeutic regimen that a prison sentence would almost certainly disrupt. Serving the rehabilitative objectives of § 3553(a)(2)(D) weighs in favor of a non-custodial or below-guideline sentence that allows Ms. Willis to continue her recovery, maintain her employment, and remain present for her children.

## V.  THE SENTENCING RANGE AND ZONE C CONSIDERATIONS (§ 3553(a)(4))

The PSR calculates Ms. Willis's offense level as follows:

| | |
|---|---|
| Base Offense Level (USSG § 2B1.1(a)(1)): | 7 |
| Specific Offense Characteristic – Loss >$150K (§ 2B1.1(b)(1)(F)): | +10 |
| Adjusted Offense Level: | 17 |
| Acceptance of Responsibility (§§ 3E1.1(a) & (b)): | -3 |
| Zero-Point Offender Reduction (§ 4C1.1): | -2 |
| **Total Offense Level:** | **12** |

With a Criminal History Category of I and a Total Offense Level of 12, Ms. Willis' advisory guideline range is **10 to 16 months**. (PSR ¶ 55.) Because this range falls within Zone C of the Sentencing Table, the minimum may be satisfied by (1) a sentence of imprisonment, or (2) a sentence of imprisonment combined with a term of supervised release that includes community confinement or home detention provided at least one-half of the minimum is served by imprisonment. USSG § 5C1.1(d). The Court therefore has flexibility to structure a non-custodial or hybrid sentence within or below the guideline range.

Ms. Willis respectfully submits that a sentence *below* the advisory range is the appropriate disposition. The advisory range, as calculated, does not account for all relevant § 3553(a) factors, including the complete satisfaction of restitution before sentencing, Ms. Willis' traumatic personal history, her young children, and the genuinely extraordinary nature of her acceptance of responsibility.

## VI.  THE JSIN DATA SUPPORTS A BELOW-GUIDELINE SENTENCE (§ 3553(a)(6))

The Sentencing Commission's Judiciary Sentencing Information (JSIN) data, set forth in the PSR at ¶ 75 provides compelling statistical support for a below-guideline sentence. During the last five fiscal years (FY2021–2025), there were 700 defendants whose primary guideline was § 2B1.1, with a Final Offense Level of 12 and a Criminal History Category of I. Of those 700 defendants:

- The average sentence imposed was 5 months, and the median sentence was 3 months.

- For the 55% of defendants who received any term of imprisonment, the average length was 7 months and the median was 6 months, which is below even the low end of the guideline range.

- Notably, 45% of similarly situated defendants (those with identical offense levels and criminal history) received a non-custodial sentence.

These statistics are particularly significant in Ms. Willis's case because she has *already paid restitution in full*. If the median sentence imposed on defendants who had not made restitution is 3 months, a defendant who has paid $175,000 before the Court has even pronounced sentence would be an appropriate candidate for a lower sentence.

## VII. COMPARABLE CASES IN THIS DISTRICT SUPPORT A NON-CUSTODIAL SENTENCE (§ 3553(a)(6))

Two recent wire fraud cases in this district illustrate that downward variances are appropriate even where the loss amounts and guideline ranges are substantially higher than those present here.

In *United States v. Jeffrey Gossett*, No. 6:21-cr-00381-TMC-1 (D.S.C. July 2022), the defendant pleaded guilty to two counts of Wire Fraud and Money Laundering in connection with SBA PPP/EIDL loans, with an advisory guideline range of 57–71 months and a loss amount exceeding $1.87 million. Judge Cain granted a variance and sentenced the defendant to time served with two years of supervised release including six months of home detention with GPS monitoring. Critically, the defendant in *Gossett* had made **no** payments toward his restitution obligation at the time of sentencing.

In *United States v. Kelly Wesley Sanders*, No. 8:21-cr-00605-DCC-1 (D.S.C. July 2022), Judge Coggins granted a downward variance and sentenced the defendant to five years of probation following his plea to Wire Fraud with an advisory range of 63–78 months and over $2.5 million in outstanding restitution. The defendant had also made **no** payments at sentencing.

9

The comparison is stark. In both *Gossett* and *Sanders*, courts in this very district granted substantial downward variances (from active imprisonment to home detention and probation) for defendants with higher guideline ranges, larger losses, and zero restitution paid. Ms. Willis's advisory range of 10–16 months is a fraction of those ranges. Her loss amount is a fraction of those losses. And unlike those defendants, she has satisfied her restitution obligation in full. Section 3553(a)(6) directs this Court to consider unwarranted sentencing disparities, and any sentence exceeding those imposed in *Gossett* and *Sanders* would create precisely such a disparity.

## VIII. RESTITUTION (§ 3553(a)(7))

Ms. Willis has already paid restitution in the amount of $175,000.00. (PSR ¶¶ 17–18, 71.) The PSR confirms that Beauregard Design has been compensated for its total loss amount and that a restitution order is not needed. (PSR ¶ 18.) The Court should view full pre-sentencing restitution as among the most compelling mitigating factors in this case. It reflects not merely compliance with a legal obligation, but a deliberate and costly decision by Ms. Willis and her family, including the sale of their home, to make the victim whole before being ordered to do so.

## CONCLUSION

For the foregoing reasons, Lindsay Marie Willis respectfully submits that a sentence *below the advisory guideline range* is "sufficient but not greater than necessary" to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). Ms. Willis is a first-time, nonviolent offender who accepted full responsibility, cooperated at every stage of these proceedings, and paid $175,000.00 in full restitution before sentencing, including through the sale of her family home. She is the primary caretaker of four-year-old twins. She is a woman who began this offense in the immediate wake of one of the most devastating losses a human being can endure: the death of her

infant daughter. She has spent the years since in therapy, in reflection, and in the slow and painful work of rebuilding.

None of us can fully imagine what Ms. Willis has carried. None of us can know what it is to hold a 17-month-old child one day and grieve her the next, and then be expected to show up to work, to function, to be whole. The law does not ask this Court to excuse what Ms. Willis did. It asks this Court to see her as a complete human being whose conduct does not exist in a vacuum, but in the context of a grief that would have broken most people entirely. That context does not erase responsibility. It deepens our understanding of it. And it compels a sentence that is just without being excessive.

A non-custodial sentence would honor the mandate that each defendant be sentenced as an individual, reflect the extraordinary circumstances presented here, and serve the interests of justice. It would be sufficient, but not greater than necessary.

Ms. Willis respectfully requests that this Court impose a sentence below the advisory guideline range to be served on probation or home detention, accompanied by any conditions the Court deems appropriate, including continued mental health treatment, financial monitoring, and community service.

<div style="margin-left: 40%;">

Respectfully submitted,

s/ Shaun C. Kent

Kent Law Firm, LLC
Post Office Box 117
Manning, SC  29102
(803) 433-5368
Federal ID #9326
shaun@shaunkentlaw.com
Attorney for Lindsay Marie Willis

</div>

June 4, 2026